CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

January 24, 2025

LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **DESTINED GEORGE,** | ) |
| Plaintiff, | ) Case No. 7:23CV00453 |
| v. | ) **OPINION AND ORDER** |
| **COUNSELOR KEGLEY, ET AL.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Destined George*, Pro Se Plaintiff; *Anne Marie C. White Rene, Assistant Attorney General*, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, *Richmond, Virginia, for Defendants.*

The plaintiff, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. George alleges that correctional officers at Red Onion State Prison (Red Onion) improperly placed and held him too long in a mental health segregation cell, did not provide him adequate, clean clothing for nearly two months, wrongfully delayed a classification proceeding that prolonged his confinement in segregation, and forced him to kneel and wear certain shackles against medical orders. The matter is before me on the defendants' Motions for Summary Judgment, arguing that George failed to exhaust his administrative remedies before filing this action.[1] George has filed a response to these motions. After review of the record, I

---

[1] In support of the defendants' exhaustion defense, they present an affidavit by T. Still, Red Onion Institutional Grievance Coordinator, who explains her review of George's grievance file and grievance report. Mem. Supp. Mot. Summ. J., Still Aff., ECF No. 19-1.

conclude that the defendants' motions must be granted and that George's claims must be dismissed with prejudice.

I. BACKGROUND.

In George's Amended Complaint, he alleges the following sequence of events. On February 20, 2023, Sergeant Dutton placed George "in segregation inside a mental health restraint cell without [George] having a psychological analysis." Am. Compl. 4, ECF No. 7. During the segregation move, Dutton required George to kneel, despite "posted medical documentation of [his] knee injury" and forced shackles onto George's ankles that were too small, despite "posted medical documentation" that officers should use oversized shackles on him. *Id.* at 8–9.

George remained in segregation until April 20, 2023. The disciplinary infraction that triggered this housing assignment was dismissed. For weeks, Defendant Burke[2] refused to provide George with the proper amount of clean laundry. Counselor Kegley refused to conduct a classification proceeding unless George waived his procedural right to 48-hour notice of that hearing. George reported to Warden White and Unit Manager Miller that officials were holding him longer in segregation than regulations permitted, but they did nothing to correct this

---

[2] Defendant Burke, misidentified in the Complaint as Bert, filed a separate summary judgment motion that relies on Still's affidavit and attachments.

situation. Miller deprived George of his job "without proper authorization," making George ineligible for release from segregation to the general population. *Id.* at 9.

Liberally construed, George's Amended Complaint asserts the following claims against the defendants:

    A.    White, in his supervisory role, had reports that officials were holding George too long in segregation in violation of procedure, but failed to correct the problem.

    B.    Dutton wrongfully placed and held George in a mental health segregation cell from February 20 to April 20, 2023, without a psychological analysis.

    C.    Dutton forced George to kneel on the ground and wear shackles that were too small for him, contrary to medical documentation.

    D.    Burke refused to provide George with clean clothing or the proper amount of clothes during most of his time in segregation.

    E.    Miller removed George from his prison job without proper justification.

    F.    Miller in his supervisory role, had reports that officials were holding George too long in segregation in violation of procedure, but failed to correct the problem.

    G.    Kegley refused to hold George's classification hearing in retaliation after George would not waive his rights to 48-hour notice, thus forcing him to remain longer in segregation.

As relief in this action, George seeks monetary damages.

II.  DISCUSSION.

A.  Standards of Review.

The Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312–13 (4th Cir. 2013).  To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted his available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006).  Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless,

properly exhaust all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

## B.  VDOC Grievance Procedures.

Operating Procedure (OP) 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a). Still Aff. and Enclosure A, ECF No. 19-1. All issues are grievable except disciplinary proceedings and matters outside the control of the VDOC. Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal/Written Complaint form[3] and submitting it to prison staff. He should receive a written response on the bottom of the form within fifteen days, to allow him to initiate the formal grievance procedure by filing a Regular Grievance, with the Informal/Written Complaint form or any other relevant documentation attached. The filing of an Informal/Written Complaint does not satisfy the exhaustion requirement under § 1997e(a). If the inmate is dissatisfied with the staff response to the Informal/ Written Complaint, or fifteen days have passed without a staff response, the inmate may submit a Regular Grievance.

---

[3] Earlier versions of OP 866.1 referred to this stage of the procedure as an Informal Complaint, while the more recent version calls it a Written Complaint. Substantively, the two forms are the same. Therefore, I will refer to the filing as an Informal/Written Complaint in this Opinion. This informal portion of the grievance process also includes making a verbal complaint that is not at issue in this case.

A Regular Grievance must be filed within thirty days of the occurrence about which it complains. It should only address one issue, and if multiple issues are presented, responding officials will only address one issue. If a Regular Grievance does not comply with the filing requirements of OP 866.1, it will be rejected at intake and returned to the inmate within two working days from the date of receipt. The respondent will note on the back of the form the reason for rejection and how to remedy any problems if feasible so that the inmate can correct the issue and resubmit the Regular Grievance.

Once the Regular Grievance is accepted at intake, the warden or his designee will investigate the complaint it contains and send the inmate a Level I response. If the responding official determines the grievance to be unfounded, the inmate has five days to submit the Regular Grievance and attachments on appeal to Level II, to an appropriate VDOC official such as the Regional Administrator or other administrator, depending on subject matter. In most cases, this Level II review is the final available level of appeal. For full exhaustion, the inmate must submit the claim via an Informal/Written Complaint, then in a Regular Grievance, and then through all levels of appeal available in OP 866.1.

C. George's Administrative Remedy Records.

Still attaches a copy of George's Grievance Report for January 1, 2023, through April 22, 2024. This report logs all Informal/Written Complaints, Regular

Grievances that were accepted at intake, and appeals to Level II of the Regular Grievance procedure, that the inmate has filed in accordance with OP 866.1. A Grievance Report does not record Regular Grievances the inmate may have filed that were rejected at intake. However, VDOC staff date stamp any such rejected Regular Grievance and maintain a copy of it in the inmate's grievance file. Still indicates that she has reviewed George's grievance file.

Still states, and the attached records reflect, that George filed a number of Informal/Written Complaints and accepted Regular Grievances between February 20 and April 20, 2023. *Id*. at Enclosure B. Still's review indicates, however, that George has filed only two Informal/Written Complaints related to allegations included in this lawsuit.

George started the grievance process regarding his allegations in Claim D, alleging deprivation of clothing items. On April 7, 2023, George submitted an Informal/Written Complaint, Log No. ROSP-23-INF-01252, complaining that Sgt. Bert (later identified as Burke) had refused to give him clean clothes for 47 days. *Id.* at Enclosure C. This filing also stated that the defendant took his laundry request, but did not process it, although he processed other inmates' requests. A staff member filed a response, dated April 18, 2023, stating: "You were offered fresh linen. Your change of status has been documented upon your reassign [sic] to appropriate housing." *Id.* Review of George's grievance report and file do not show

that he submitted a Regular Grievance on the issue presented in Log No. ROSP-23-INF-01252, although a complaint about insufficient clothing was grievable. As he failed to complete the Regular Grievance phase of the procedure or pursue any appeals, he failed to exhaust his available administrative remedies as to Claim D, his complaint that Burke did not provide him clean and adequate amounts of clothing for weeks in 2023.

George also began the grievance process as to Claim E, about his prison job. George filed an Informal/Written Complaint dated May 31, 2023, Log No. ROSP-23-INF-02020, complaining that he had been wrongfully "removed from [his] mandatory job" based on a pending disciplinary infraction for which he was later found not guilty. *Id*. at Enclosure D. George insisted that he should be reinstated to his job so he could be "eligible to progress [under] the Step-down program." *Id.* In a response dated June 2, 2023, staff responded: "Per ROSP O.P 841.2 you must be 90 days infraction free. Your last infraction was on 4-11-23." *Id.* A review of George's grievance report and file do not show that he submitted a Regular Grievance on the issue presented in Log No. ROSP-23-INF-02020, although loss of a prison job was grievable. As he has failed to complete the Regular Grievance phase of the procedure or pursue any appeals, he has failed to exhaust his available administrative remedies as to Claim E.

Still states that her review of George's grievance report and file do not indicate that he filed any Informal/Written Complaint or Regular Grievance or appeals regarding the issues in any of his other claims against the defendants in this case. Without following these steps of the VDOC's established grievance procedure, George could not have satisfied the exhaustion requirement mandated in 42 U.S.C. § 1997e(a).

George offers sparse discussion of exhaustion in his submissions to the court. He states in his verified Amended Complaint that he "filed several grievances with different results," without describing the content of these filings, the dates of submission, or the results. Am. Compl. 2, ECF No. 7. He also claims that he filed unspecified verbal and written requests "on designated forms" to Miller and White about being in segregation for too long, only to have those forms "ignored." *Id.* at 8. Such generalized assertions, unsupported by facts, are insufficient to create a genuine dispute of material fact when weighed against the defendants' particularized evidence about their records of George's grievance filings. Indeed, George does not allege or present any verified statement asserting that the defendants' evidence about his grievance filings is inaccurate or incomplete in any way.

In response to the defendants' summary judgment motions, George files two similar declarations signed under penalty of perjury. He asks the court to deny the motions because he is a Red Onion prisoner, he "does not possess facts essential to

justify his opposition to" the motions, and he "does not have the funds to obtain the facts essential to justify his opposition" to the motions. Resp. George Decl., ECF Nos. 26-1, 35-1. George does not, however, provide any description or statement of facts on which he claims he could show that he did, in fact, complete all the steps of the VDOC grievance procedures. Moreover, George has not shown that any phase of the grievance procedure was unavailable to him in any way. *Ross*, 578 U.S. at 642 (holding that while § 1997e(a) requires inmates to exhaust available administrative remedies, they "need not exhaust unavailable ones").

Based on the record before me, I conclude that the defendants are entitled to summary judgment as a matter of law on the ground that George did not exhaust available administrative remedies before filing this lawsuit, as required under 42 U.S.C. § 1997e(a). Nothing suggests that George could now exhaust administrative remedies as to the claims in this case, so I will dismiss his claims with prejudice.

### III. CONCLUSION.

For the stated reasons, it is **ORDERED** as follows:

1. The defendants' Motions for Summary Judgment, ECF Nos. 18 and 30, are GRANTED on the ground that the plaintiff failed to exhaust his available administrative remedies; and

2. Plaintiff's claims are DISMISSED WITH PREJUDICE.

A separate Judgment will enter herewith.

          ENTER:   January 24, 2025

          /s/  JAMES P. JONES
          Senior United States District Judge